Laurie Schoenberg from the Federal Defenders of San Diego. How are you? I'm sorry, continue. How are you? Oh, good. How are you? On behalf of the petitioner appellant, Henry Lee Wallace, in this case. I don't see Mr. Kernel here. Are you? No, I'm Douglas Keeson from the United States. Oh, we have Mr. Kernel listed on our day sheet. It's perfectly fine. You are here representing the United States. Yes, Your Honor. Okay, so you have an appellant. Yes. Your Honor, I intend to focus on the calculation of Mr. Wallace's special parole term. In the district court, the district court determined that Mr. Wallace's term of special parole began on October 2, 1987. Since it determined that the special parole term began on that date, it also determined that Mr. Wallace's arrest on May 24, 1989, constituted the one and only violation of special parole, that Mr. Wallace forfeited all street time on special parole between his 1987 release and his 1989 arrest, and that his subsequent modified term of special parole would end on May 23, 2004. Would you agree that when he got mandatory parole that his sentence was not completed? I actually – I would not agree that he actually did get mandatory parole in this case. When he was given mandatory parole, what did you think his – what was he on then? In other words, he had not completed his sentence, and the parole board gave him mandatory release, and he still had time for a sentence to run. What I would say, Your Honor, is that he was released on a term of regular parole on February 16, 1981, and as of December 11, 1985, he was discharged. But he was on the old law, wasn't he? Wasn't he sentenced under the old law? Yes, he was. And he got a sentence on that, and he didn't finish that sentence while he was in jail. He didn't finish the sentence while he was in jail. He got mandatory parole. What was he – what, in your view, was he doing then? Had he started the special parole, or was he still completing the sentence? No. As of December 11, 1985, he had completed his term of regular parole and the sentence of imprisonment together, which together constituted an eight-year term. And then at that point, on December 11, 1985, began his 15-year special parole term. So when he violated his parole, what was he doing then? A new sentence or going back and doing the – finishing the old sentence? When he was – when he originally violated his parole in 1982 and 1983, is that what you're talking about, Your Honor, those dates? He was completing his original sentence of imprisonment. 18 U.S.C. section 4210 says, if someone violates their regular parole before they complete the whole term of imprisonment, the parole commission can determine whether any unexpired part of that eight-year term is completed in jail or outside. And that means he was actually re-paroled twice and then finished the whole eight-year sentence of imprisonment on December 11, 1985. As I was saying, Your Honor, in this case, the district court determined that Mr. Wallace was released on special parole on October 2, 1987. What it forgot to do, though, was look at the certificate of mandatory release to special parole, which indicated actually that he was discharged from his eight-year term of imprisonment, which did include jail and regular parole, and then began his 15-year term of special parole at that point. Since the district court failed to acknowledge that particular certificate, which indicated that he was released to special parole at that time, the district court's ruling that his term would expire on May 23, 2004, is clearly erroneous. This Court should reverse the denial of the writ of habeas corpus and should order the district court in any future parole violation to sentence him in accordance with what would be the correct expired term of his special parole, which would be October 2, 2001. The evidence in this case demonstrates that Mr. Wallace's special parole term ended on October 2, 2001. The parties agree that he was convicted on March 20, 1978. At that time, he received an eight-year sentence and then a 15-year term of special parole to follow that. As I indicated before, he was paroled on his regular parole term on February 16, 1981. He came back into custody twice but was ultimately released pursuant to the certificate of mandatory release on special parole on December 11, 1985. Because he had already gotten parole in this case, the mandatory release statute did not apply at all. The mandatory release that the government is talking about only applies in the absence of a release on parole prior to the expiration of a term of imprisonment. Therefore, since the mandatory release statute did not apply and Mr. Wallace had been paroled before that time, he didn't serve an additional term of mandatory release on December 11, 1985, but was instead released to special parole. The certificate actually backs this up. In this case, Mr. Wallace was released from Effective Communications, Inc., which the government concedes is a halfway house pursuant to a, quote, certificate of mandatory release to special parole. Would that mean that the ---- Kennedy. No, but that doesn't conform to Bureau of Prison Records. That certificate issued by this halfway house, can it really bind the government? I would actually contest that assertion by the government because there's no indication on the certificate itself that it was, in fact, issued by the halfway house. What the certificate actually states is it's on Department of Justice letterhead, Bureau of Prisons letterhead as well, and it lists the name of the facility that he's being released from as Effective Communications, but there's no evidence on the record that Effective Communications actually prepared that certificate in this case. The ---- It's signed by Michael Smith. Who's he? According to the certificate, it's a warden or superintendent. Well, I mean, that's ---- But who is he? I don't know, Your Honor. And there's no indication in the record as to who he actually is. The certificate does also declare ---- It's clearly inconsistent with Bureau of Prison Records. I'm sorry? It's inconsistent with the Bureau of Prison Records. It is inconsistent with the Bureau of Prison Records, Your Honor, but I would argue that the certificate actually is more ---- bears more indicia of reliability than the Bureau of Prison Records in this case. Well, but if we can't really figure out who signed it, how can this be authenticated? It's on letterhead. It is on letterhead. People can get letterhead. I mean, I'm not saying anybody did, but the fact that you've got a piece of paper with Justice Department letterhead doesn't mean it's a ---- any kind of official admission or statement or position of the Justice Department. On the other hand, the file, his file is the official record of what the Bureau of Prison has calculated his sentence and parole time and the like. I mean, the two things conflict. Well, unfortunately ---- So now we're required to go with the file? If the government actually submitted the file. In this case, the government did not submit the file. What they did submit was a sentence computation sheet from which they derived the term of mandatory release. Now, that sentence computation sheet was prepared on March 13, 2002, as part of exhibits to a litigation packet prepared by P. Don Sigma of the U.S. Parole Commission to be filed with the government's briefing in the district court. That particular sentence computation did not contain any information about who prepared it, what documents they used to prepare it, where they got the information from at all. In contrast, the certificate in this case was stamped by the Bureau of Prisons as received by the Bureau of Prisons three months later, but it was still a stamp indicating that they received it as an official agency document. And that document, as well, also contained a warning for the special parolee if they violated the conditions. I'm sorry. What is it about the stamp that makes it an official agency document? Well, it's the stamp says received. Do you remember where the excerpt goes? Sure. It's page 2 of the excerpt of records. Put it right up front. And it says on March 31st, 1986, received by the Federal Prison System in San Diego, California. Well, I have tons of stuff that comes in my office and gets filed and received. If it comes to the door, my secretary puts a stamp on it. That's how we keep track of stuff. Does this mean anything more than we got it in the mail? Well, I would argue that if you send them to the clerk's office and the clerk can't file it, they mark it received. That may be the case, Your Honor. But in this case, there's also the combination of the letterhead and the actual signature and the file stamp should indicate at least that this particular document And where did this come from? This came from Mr. Wallace's file? I believe it came from Mr. Wallace's file. It's unclear as to where it actually came from. But I would point out as well that the October 2, 1987 certificate that the government is relying upon in this case to say that his special parole term started on that date contains the same infirmities that the government cited. In that case, they also had a file stamp dated March 31st, dated about three months later. And in addition, containing the same information, for instance, the name of a probation officer, a signature of a supervisor, and also a statement on top saying that it was a certificate of release. So I don't think in terms of reliability that there's any significant difference between this certificate of parole and the government's sentencing computation sheets in light of the fact that the sentencing computation sheets were prepared in anticipation of litigation without any supporting documents for the relevant period here, which would be between 1985 and 1989, then the certificate, I would think, would be more reliable in that case. Isn't it wrong on its face? I mean, it's more than 15 years? It's wrong on its face, but, Your Honor, a lot of documents, even from the Parole Commission, can calculate sentences incorrectly. I mean, the whole thinking is wrong on its face. That's further evidence that it's not really a valid certificate. Well, the date may indicate that something is incorrect, but there's nothing else on there to indicate that this particular document is incorrect. I mean, it does list the name of my client. It does list the name of where he was being released from. It does list his registered number. And it does have files found from the federal prison system. But just for writing, beyond supervised, he'd be on special parole for two more years beyond the mandatory maximum. I do understand that. I understand that there is that distinction here, Your Honor. But I don't think in this case that that diminishes the reliability of when he actually went on special parole, which is the operative date here. That date combined with the judgment in this case would actually leave him originally with an expiration date of 2000. And because he was arrested on September 18th of 1986, he forfeited not the two-year period that the government is suggesting, but just the period between December 11th of 1985 and September 18th of 1986. So, therefore, he should have been done with special parole on or about October 2nd, 2001, as was stated in our papers. Your Honor, I note that I'm way over my time. I'd like to reserve some time for rebuttal. Can I do that? You've got minus 3 minutes and 12 seconds. We'll see what we can do for you. Okay. Thank you, Your Honor. By the way, all the stuff you've learned about parole, it may be back in light of Blakely. Who knows? Yeah. Who knows? This may have been a good investment of your time. It may have been an educational experience for her. I'm going to switch here. We'll hear from the government. Hey. Please record. My name is Douglas Thiessen, and I represent the appellee United States. Your Honor, before I begin, I'd like to note that this is a habeas corpus petition and proceeding where Wallace is challenging his future custody on the commission's warrant, which was lodged against him as a detainer. He's not in Federal custody now. He's in California State custody. As such, the only live case or controversy before the Court today is the lawfulness of the commission's violator warrant, which is lodged against him as a detainer. The issuance of the commission's 1999 supplemental violator warrant barred the expiration of the remainder of his special parole term and preserved the commission's jurisdiction to revoke Wallace's mandatory release. The threshold issue in this case, therefore, is whether the detainer is lawfully lodged against him. Because the commission dismissed the original 1998 charges pursuant to Thompson that were part of the originally executed warrant, the 1999 supplemental warrant remains lawfully lodged against Wallace as a detainer. This case is on all fours with Thompson. In both cases, the commission first issued a violator warrant on administrative charges. The warrant was then executed. The commission learned of subsequent criminal charges, and then the commission supplemented its warrant with another warrant. This Court held that in a case such as this, the commission has two choices. It can first either grant a revocation hearing immediately on all the charges, or the commission can dismiss the initial charges. And that's what the commission did in this case. This Court reaffirmed the commission's authority to do so in Johnson v. Riley. As the Court – as the commission did in Johnson, the commission decided to dismiss the original administrative charges. Therefore, it's as if there's two tracks, the first 1998 warrant and the 1999 warrant. Although the 1998 warrant was executed, the commission has dismissed those charges and there's no due process considerations. The 1998 warrant, on the other hand, is lawfully lodged as a detainer, and Wallace is not entitled to any due process rights until the execution of that warrant pursuant to the Supreme Court's decision in Moody v. Daggett. Furthermore, Your Honor, there's no violation of the statute or due process. Well, but if he is right in his claim that you can no longer have a special parole term because it was served and expired and under Robles you can't renew it, then he is entitled not to even have a hearing on that, not to even stay one day in prison under the detainer because there's nothing to have a hearing about. Isn't that right? Now, the case law is clear that ---- I think you're arguing some sort of ripeness here. And the district court treated this as a 2241 rather than 2255. And that strikes me as right, that, you know, it doesn't affect him right now today, but there is an inevitable day, assuming he survives that long, that he will come to the end of his state sentence, at which point he wants to go free. He doesn't want to be detained on what he claims to be an illegal warrant. So I ---- The issue before the Court, though, is whether or not the commission lawfully issued a warrant that preserved its jurisdiction to revoke his parole prior to his expiration date. Now, Wallace is arguing that his expiration date argued in ---- Wallace is arguing that his expiration date was in 2001, and the government in its case was in 2004. But regardless of those dates, the 1999 violator warrant that was issued by the commission is well before any of those dates. And pursuant under the commission's regulations, statute, and the case law of both the Circuit and the United States Supreme Court, the commission's warrant lawfully preserves its jurisdiction to subsequently revoke his parole, his special parole, when the parole commission's warrant is executed. It's only the execution of the warrant that is the issue that invokes his due process rights. Well, due process rights determine whether or not he violated. I mean, that's a factual question, but he has a claim that they can no longer issue this kind of warrant, the detainer, because he has served his special parole term, and under Robles, you can't have a second special parole term. You know, you would have one and ---- Well, his claim is that his ---- That was it, right? Wallace's claim is that his sentence has expired, but what he fails to understand is that the commission's warrant in 1999 operates as a bar to the expiration of the sentence. So the sentence could not have ended in 2000 or 2004 or 2008 or further out. It's now suspended under the Roosie case, this Court held in Roosie v. United States Department of Justice, pursuant to the commission's regulation that the issuance of a warrant lawfully bars the expiration of the sentence. So the sentence will only begin to run anew upon the execution of the warrant, and that will only occur after Petitioner serves his intervening state sentence. With regard to his sentence expiration date, Wallace's argument has no merit. He served an 8-year prison sentence. He received an 8-year prison sentence and a 15-year special parole term to follow. Wallace never completed the 8-year regular sentence until 1987, despite the fact of this erroneous document that's in the record excerpts at 2. Under Bunker v. Wise, the law is clear in this circuit that a special parole term may only begin upon completion of a regular sentence, and that includes not only the prison portion of the sentence, but it also includes any release, mandatory release or parole that follows the prison portion of the sentence. In this case ---- Excuse me. I thought I understood Ms. Schoenberg to say maybe I misunderstood her. But I think I heard her say that this guy was sentenced in 78. He was paroled sometime in 81 and then was, if you buy the district judge's analysis, was mandatorily released in December of 85. Her point was that if the guy had been ---- since he was paroled before the so-called mandatory release, it couldn't be mandatory release. I think this was ---- she's nodding yes. That's what ---- Your Honor, that is incorrect. When ---- there are two types of release that can follow a release from prison under 18 U.S.C. 4205. The prison sentence is served and the commission either revokes the parole and re-paroles the petitioner, the prisoner, or the prisoner will ---- or the commission will decide not to release the prisoner on parole, in which case the prisoner is released by operation of law at the expiration of a sentence, less good time credits. Upon Wallace's release in December of 1985, he was mandatorily released from the sentence. The commission decided not to parole him. He had ---- the commission first paroled him in 81. Then the commission revoked his parole. Then the commission continued him to the expiration of his term, determined that he should not have been paroled, and he was released by the expiration of a sentence, less good time credits. However, he misbehaved again, and the commission revoked his mandatory release again, and the commission determined not to parole him again. It wasn't an expiration of the sentence, then. It was a mandatory release. It was a mandatory release. She's saying it couldn't be mandatory release because he had been previously paroled. That's incorrect. Whenever the commission orders someone to continue to the expiration of a sentence, he, the parolee, the prisoner, is entitled to release at the expiration of a sentence, less good time credits. And that's what happened here in 1985 when the commission determined after his ---- after he was in the community twice, the commission determined he should not be released into the community again unless by operation of law. And in 1985, he was released pursuant to 18 U.S.C. 4164 by operation of law. And only after he completed that mandatory release term in 1987 did he begin serving his 15-year special parole term. Your Honors, I see that my time is running short here, and I just wanted to note that the commission did provide to the Court a copy of the Grisby-Marrenville decision, which is a Second Circuit decision regarding special parole. The commission has not taken any action in Wallace's case with regard to the special parole issue. When the detainer is exercised or if the commission needs to take action before then, the commission intends on going forward and forfeiting all the time that Wallace has spent under special parole. And this would be contrary to the Robles decision, but the commission is of the ---- interprets the U.S. Supreme Court's decision in Johnson v. United States, which is referenced in the Grisby-Marrenville decision, to overrule Robles, and the commission will take administrative action whenever the commission has the opportunity to do so. That will happen when the detainer is exercised. How can you do that if you've got a binding decision from the circuit that says you can't ---- the commission can't do that? Because the U.S. Supreme Court decision in Johnson v. United States abrogated Robles in the commission's interpretation. That's certainly a reading of what the Supreme Court did. The second circuit, in a not terribly persuasive opinion, concluded that. But it's paper thin, and I personally have serious doubts we would follow it. At least I would. But in any event, right now, Robles is the law of the circuit, and I'm not quite sure how the commission can arrogate to itself the authority to start changing people's records when the controlling law of the circuit ---- perhaps if the commission wants a clarification, it needs to seek a declaratory judgment or, you know, some other means of clarifying the issue. But the second circuit opinion is certainly not binding in this circuit, and if you read it carefully, you will find that you're probably not going to be blown away by it. It helps your client, but it's not really very good. So don't take any silence on our part as any kind of consent to what you say your client is proposing to do. In this case, Your Honor, the commission has not taken any action. The commission has merely provided the Rich v. Maranville decision to the court just to be frank with the court, to let the court know what the commission ---- Just to be frank back to you, this is not a case, as in Miller v. Gammy, where the Supreme Court ruled on the same statute, on the same legal doctrine. What it did is it ruled in an analogous but very different statute. And from that, the second circuit, you know, went a long ways with very little. So I think it would be reckless on the part of the commission to simply assume that we will follow suit. It would take ---- I think it's important for the ---- to think very carefully about doing that, so long as the law of the circuit is what it is in this circuit. I understand, Your Honor. But we may not have a case in this case, but just so you ---- If there are no further questions. Okay. Can you spell your last name for me so I can have my records? Cheeson. It's spelled T-H-I-E-S-S-E-N. T-H-I-E-S-S-E-N?  Douglas W. Thank you. Thank you, Your Honor. You know that Mr. Conner was on the day sheet. That's why we're asking. I mean, we're not ---- there's no problem. It's just ---- No, Your Honor. Mr. Conner asked the commission to take this oral argument. He did not give a reason. Oh, you work for the commission? Yes, I do. Oh, I see. I'm the counsel at the U.S. Department of Justice, U.S. Parole Commission. Oh, okay. I got it. Okay. Well, we will not notify. That's fine. Thank you. Thank you. I think you have a minute left for a bottle, I think. So that's my recollection. Thank you, Your Honor. Just very briefly with respect to the brightness issue, I take the government's assertion that they actually intend to proceed on the violator warrant as something to a waiver of any claim that it's not right. If they do intend to proceed on the violator warrant once the state sentence expires, then he would be entitled to the due process rights as outlined previously in the briefs. I would also note that 18 U.S.C. section 4214F states that if someone is convicted of something involving possession of controlled substances, then revocation would be mandatory, assuming that revocation could even occur in this case due to the expiration of the parole term, as Your Honor has stated. In this case, the basis of the November 5, 1999 supplemental warrant relates to the possession of controlled substances. So in that respect, it's not a speculative thing that parole could be violated, assuming that his special parole term has not expired, arguendo. It actually would happen in this case. Second of all, Your Honor is correct. What in my – in the characterization of my argument, what I was arguing is that you cannot have both mandatory release or – and parole. You can either have mandatory release or parole. Since this person was paroled in 1981, the mandatory release statute does not apply. Therefore, the 180-day period that the government refers to is not added to the 8-year term of imprisonment, and he would be released as of December 11, 1985. What's the authority for that proposition? 18 U.S.C. section 4164, Your Honor, states, quote, A prisoner having served his term of terms, less good time deductions shall, upon release, be deemed as if released on parole until the maximum term or terms for which he was sentenced last 180 days. HCFR section 2.35a, entitled Mandatory Release in the Absence of Parole, states, quote, A prisoner shall be mandatorily released by operation of law at the end of the sentence imposed by the court, minus good time, and provides that he will be released on parole for the rest of the sentence, less 180 days, if released under 18 U.S.C. section 4164. Additionally, HCFR section 2.57a provides that special parole commences after the completion of any period on parole or mandatory release supervision. Those statutes and regulations convey that it's either mandatory release or parole. Mandatory release operates as the end point of a sentence of imprisonment in the event that someone is not paroled beforehand. And in this case, Mr. Wallace was. Excuse me, but why is it inconceivable that he could be paroled, violate parole, brought back, finishes, is brought back to finish his term, and then is, when his term expires, he's mandatorily released? Well, in this case, because, first of all, because those statutes do refer to either parole or mandatory release. I mean, they've got to let him out, right? Right. Or they let him out because he's finished his term. Well, also under 18 U.S.C. section 4210b2, when someone violates parole before they finish serving their full sentence of imprisonment, the court figures out, the parole commission figures out what portion of the unexpired term would be served in prison. It does not state that there is an additional mandatory release. Mandatory release is something that operates as sort of the end point if that person hasn't been released beforehand. And in this case, he actually was. Also, additionally, in McQuarrie v. U.S. Parole Commission. I think you're well past one minute. All right. Thank you, Your Honor. Okay. Thank you, counsel. Case decided. We'll stand submitted. We're adjourned. All rise. And put on.
judges: Kozinski, Silverman, Weiner